## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARILYN CALVIN (NEXT OF KIN), ON BEHALF OF B.C., (MINOR CHILD) | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-20-621-AMG** |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Marilyn Calvin ("Plaintiff" and next of kin) brings this action on behalf of B.C. ("Claimant" and minor child) pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Claimant's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.  (Doc. 1).[2]  The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 20, 21), and the parties have fully briefed the issues. (Docs. 26, 32).  The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 24, 25).  Based

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant.  *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination.  Citations to the Administrative Record refer to its original pagination.

on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.     Procedural History

Claimant filed an application for SSI on February 7, 2017, alleging a disability onset date of January 24, 2006.  (AR, at 69-70).  The SSA denied the application initially and on reconsideration.  (*Id*. at 95-98, 104-11).  Then an administrative hearing was held on November 27, 2018.  (*Id*. at 45-68).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Claimant was not disabled.  (*Id*. at 12-44).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## II.    The Administrative Decision

At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity since February 7, 2017, the application date.  (AR, at 18).  At Step Two, the ALJ found that Claimant had the following severe impairments: asthma and obesity.  (*Id*.)  At Step Three, the ALJ found that neither of Claimant's impairments, singularly or in combination, met or medically equaled or functionally equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  (*Id*. at 18; 20).  In conducting this analysis, the ALJ assessed Claimant's functioning in six domains, as follows: (1) "less than marked limitation in acquiring and using information," (*id.* at 32); (2) "less than marked limitation in attending and completing tasks," (*id*. at 34); (3) "less than marked limitation in interacting and relating with others," (*id*. at 35); (4) "less

than marked limitation in moving about and manipulating objects," (*id*. at 36); (5) "less than marked limitation in the ability to care for himself," (*id*. at 37); and (6) "marked limitation in health and physical well-being" (*id*. at 38). Based on these findings, the ALJ found that Claimant had not been under a disability since February 7, 2017. (*Id*. at 39).

### III.   Claims Presented for Judicial Review

On appeal, Plaintiff raises one issue – that substantial evidence fails to support the ALJ's finding that Claimant has a "marked" limitation in health and physical well-being because the ALJ ignored objective evidence that may have warranted the finding of an "extreme" limitation. (Doc. 26, at 3). Plaintiff contends that the ALJ's "marked" finding "undersells the weight of the evidence," and that Claimant "likely has an 'extreme' limitation in this domain, which could result in a finding that he is disabled." (*Id.* at 4). Plaintiff takes issue with the ALJ's consideration of Claimant's absences from school. (*Id.*)

In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Claimant's functional limitations, including the "marked" limitation in health and physical well-being. (Doc. 32, at 6). Specifically, the Commissioner argues that "Claimant's teachers agreed that he was not absent frequently, and Plaintiff's admissions, as well as assessments from several doctors, all support the ALJ's conclusion that Claimant was not disabled." (*Id*. at 1).

### IV.   The Disability Standard and Standard of Review

The review of this case involves children's benefits. A child is considered disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be

expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see* 42 U.S.C. § 1382c(a)(3)(C)(i).

In determining whether a minor child is disabled, the ALJ follows a three-step evaluation process. 20 C.F.R. § 416.924(a).

> The administrative law judge ("ALJ") must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404.

*Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 20 C.F.R. § 416.924(a)).

In determining whether an impairment <u>functionally</u> equals the Listings, a determination that occurs only when the ALJ finds that the impairment does not meet or medically equal a Listing, the ALJ must evaluate the child's functioning in each of six domains. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If the ALJ finds that the minor child has "marked" limitations in at least two of the six domains, or an "extreme" limitation in one of the domains, then the child's impairment(s) functionally equal the Listings, and the child is deemed disabled. *Id.* § 416.926a(a), (d).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## V.   Substantial Evidence Supports the ALJ's Finding that Claimant Has A "Marked" Limitation In Health and Physical Well-Being.

In evaluating the health and physical well-being domain, the ALJ found

The claimant has marked limitation in health and physical well-being. At both the initial and reconsideration levels, the claimant was found to have a marked limitation in his health and physical well-being. (Ex. 2A and 4A). Dr. Wilson found the claimant to have a marked limitation in his health and physical well-being (Ex. 23F). Within her function report, the claimant's aunt indicated that claimant could walk; run; throw a ball; ride a bike; jump rope; use roller skates or roller blades; swim; use scissors; work video game controls; and, dress or undress dolls or action figures (Ex. 1E). In a later function report, she indicated that the claimant could walk; throw a ball; use scissors; work video game controls; and, dress or undress dolls or action figures (Ex. 8E). The claimant's fifth grade teacher indicated that the claimant only has issues with his asthma two to five times per month (Ex. 4E). He elaborated that the claimant does not frequently miss school due to illness. (*Id.*). The claimant's sixth grade English teacher reported that the

claimant had no problem caring for himself and that the claimant did not frequently miss school due to illness (Ex. 10E).  During his consultative examination with Dr. Fuentes, his chest was symmetrical without retractions; his heart was negative for murmurs; he demonstrated no swelling, deformities, or limitation of motion in his extremities; and, he ambulated with a normal gait and demonstrated a normal range of motion in all joints (Ex. 20F, P. 8).

(AR, at 38).

Plaintiff argues that the ALJ ignored objective evidence that could have caused him to rate the Claimant as having an "extreme" limitation, which would have resulted in a functional equivalence of a Listing and a finding of disability.  (Doc. 26, at 3-9).  *See* 20 C.F.R. § 416.926a(d).  Specifically, he argues that the ALJ erred in relying on Claimant's teachers' comments about the frequency of his school absences rather than on his school attendance records.  (Doc. 26, at 5-8) (citing AR, at 228, 294).

The health and physical well-being domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning.  20 C.F.R. § 416.926a(l).

Unlike the other five domains of functional equivalence (which address a child's abilities), this domain does not address typical development and functioning.  Rather, the "Health and physical well-being" domain addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being.

Soc. Sec. Ruling, ("SSR") 09-8p. Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Health & Physical Well-Being, (S.S.A. Feb. 17, 2009).

In assessing whether a child has "marked" or "extreme" limitations, the ALJ considers the functional limitations from all medically determinable impairments, including any impairments that are not severe.  20 C.F.R. § 416.926a(a).  The ALJ must consider the interactive and cumulative effects of the child's impairment or multiple impairments in any affected domain.  *Id.* § 416.926a(c).  A "marked" limitation occurs when an impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).  An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3)(i).

SSA regulations also provide that:

> For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have a "marked" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs.  For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more.  We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

*Id.* § 416.926a(e)(2)(iv).

> For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have an "extreme" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section.  However, if you have episodes of illness or exacerbations of your impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or

medically equal the requirements of a listing in most cases. *See* §§ 416.925
and 416.926.

*Id*. § 416.926a(e)(3)(iv).  The ALJ specifically considered these regulations in his decision.
(AR, at 17-18).

Plaintiff's argument about what it means to be "frequently" absent from school
invokes this regulatory distinction between marked and extreme limitations.  (*See* Doc. 26,
at 5) ("Further, [Claimant's] absences – and how often they occur – are critical to the
analysis of how impaired he is in this domain, because objective evidence shows that he is
absent from school due to asthma often enough that it rises to the level of an 'extreme'
limitation in the 'Health and Physical Well-Being' domain.").  Plaintiff's argument asks
the Court first to find that school absences are equivalent to "episodes of illness or
exacerbations," and then to reweigh the record evidence of the frequency of Claimant's
episodes of illness or exacerbations, as well as all the other evidence relating to the health
and physical well-being domain, to find an extreme limitation.  This the Court cannot do.

First, the Court does not agree with Plaintiff's characterization of Claimant's
attendance records.  For example, Plaintiff states that during the "sixth grade fall semester
. . . [Claimant] missed class 36 times."  (Doc. 26, at 5).  However, that number represents
the total number of class <u>periods</u> missed; whereas, Claimant only missed four full days of
school, with one due to illness relating to "breathing prob[lems]" and three due to
unspecified doctor's appointments.  (AR, at 294).   Also, the Court does not agree with
Plaintiff that every one of Claimant's school absences for a doctor's visit should be viewed
as an "episode of illness or exacerbation" of his asthma.  The attendance records do not

support such a view; at least one doctor's visit is noted as an eye doctor appointment.  (AR, at 294, absence for 12/8/17). *Even if* the Court were to accept that each of Claimant's school absences was tantamount to an episode or exacerbation of asthma, it is not at all clear that those occurrences would cause Claimant to cross over from a limitation of "marked" to "extreme" under the regulations.   Significantly, the regulations state that "if you have episodes of illness or exacerbations of your impairment(s) that we would rate as 'extreme' under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases."  20 C.F.R. § 416.926a(e)(3)(iv).  The ALJ in this case did not find that Claimant's impairments met or medically equaled a listing (AR, at 18), and Plaintiff did not contest this finding.

In making a determination that Claimant had a marked limitation in health and physical well-being, the ALJ did not rely solely on the comments of Claimant's teachers about his school absences.  The ALJ had also thoroughly reviewed Claimant's medical records from 2008 to 2019 (AR, at 20-29), which more accurately reflect the frequency and duration of Claimant's episodes and exacerbations of illness.  The ALJ also considered the opinion of Dr. Wilson; the function reports completed by Claimant's aunt, which indicated Claimant could do various physical activities; and the consultative examination by Dr. Fuentes.  (*Id.* at 38).  The ALJ was entitled to resolve evidentiary conflicts in the record and did so.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's decision was supported by substantial evidence and thus, this Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Vigil v. Colvin*, 805 F.3d

1199, 1201 (10th Cir. 2015) (internal quotation marks omitted); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Finally, the Court is unpersuaded by Plaintiff's comparison of school absences to work absences that render an adult unemployable under the standards for adult disability. (Doc. 24, at 9) ("It is submitted that [Claimant's] school absences equate to missing at least two days per month, which would preclude work according to *Gonzales*, and likely lead to an 'extreme' limitation in the domain of 'Heath and Physical Well Being.").  These situations are factually distinct, as Plaintiff does not argue and has not presented evidence that a certain number of absences from school renders a child unable to attend school. These situations are also legally distinct, as they arise under different disability regulations (adult versus child) and analyze different limitations (whether an adult retains functionality allowing him or her to work versus whether a child has a certain level of functional impairment).

## VI.    Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 26th day of March, 2022.



AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE